May it please the court, counsel. Stephen Kimble, litigant and litigator in the Marvel vs. or this is the Marvel vs. Toy Biz portion of the case. The issue here, I believe, is whether or not Section 9 of the settlement agreement means what it says or means nothing at all as Marvel contends. I know that the court had various questions about the settlement and I was involved in the litigation and I was involved in the settlement and I was involved all along so I'm more than happy to answer any questions. But I guess I think this. When the case was over, there was a judgment that the toy that was litigated didn't infringe any patent. There was a judgment that the toy that was litigated was a violation of the oral agreement that Marvel had made with me. And then that was appealed. When we were done, we wanted to settle the whole thing. Everybody wanted to settle the whole thing. So we agreed, okay, you can have the patent. So why do you want to, you wanted to settle everything and there was a settlement and so the question is but now you want to litigate the verbal agreement again. We want to litigate the verbal agreement only because in the course of this most recent lawsuit, Marvel indicated that there may be some toys that aren't covered either by the settlement agreement. Well, you have one sentence in there that you're sort of hanging everything on, right? Right. And read me that sentence. That sentence says, except for the obligations undertaken by Marvel in this agreement and except for those obligations under the alleged verbal agreement that was the subject of this action, the parties hereby release and discharge Marvel. All right, now may I also suggest that you read the first part or read most of section 12. Correct. The disagreement contains the entire agreement among the parties with respect to the subject matter herein and supersedes all prior and contemporaneous agreements or understandings. I look at those two sections and I wonder, boy, there's an ambiguity here. They're in clear tension with each other. Well, I see it like this. If I tell you, judge, you can have all my clothes except for my shoes, it means you don't get my shoes. It doesn't mean you get my shoes too. So to me, section 9 says we're releasing everything except for the verbal agreement. It doesn't mean that you still get to release the verbal agreement. So I see section 9 as saying, okay, this verbal agreement survives even after we release everybody else. Section 9 simply says if there's any other oral agreements that are not specifically mentioned in this document. I mean, if there was an oral agreement that wasn't mentioned in the document, I understand. But then the problem is, this is this moving target thing again. You're saying you released everything but the verbal agreement. Then you just sat there and listened to the last case. And they're saying that the verbal agreement is the whole basis of the settlement and that's why Brulotte doesn't terminate the royalties. So it's like everyone wants it one way when it suits them there, and then they make the other argument in the next case. Let me tell you what the concern was. When the settlement happened, there was one toy that Marvel had made and that we litigated. The jury determined that I was entitled to 3.5% of that. That's about $600,000. So that's where the number of $500,000 comes from. It's the step down from 3.5% to 3%. Okay, so Marvel agreed to pay for any toys that would infringe the patent, except for the fact they bought the patent, for the toy that was litigated. Well, what happens about the next toy when they tweak it a little bit? Let me ask you this. Hadn't there been some tweaks during the following years, but they still kept paying the same amount and you never claimed that they were violating the verbal agreement at that point? The whole thing blows up when we get into this Hasbro and all of that. So why couldn't someone look at this? And when you're talking about if it's ambiguous and you look at extrinsic evidence, there's nothing going on for 10 years about what you're talking about, this tweaking of toys. But the tweaking was going on. The tweaking occurred after the settlement agreement occurred. We wrote Section 9 in there because we were afraid they were going to tweak the toy and then say, oh, this was not the toy that was litigated, so we don't have to pay you for it. Because all that they had to pay for was toys that would have infringed the patent or the toy that was litigated. So what happens if they change it a little bit? Are they going to pay us for that? So if they were paying for toys that infringed the patent, then why isn't it a hybrid agreement and why doesn't Berlot take care of it in the last argument? Because my understanding is, and again, I don't want to spoof on you. See, everyone's talking past, you know, depending on what case we're talking about, they take a different position and they don't, the positions don't reconcile. With all due respect, I think that they do, only because I think that even though it's not, my understanding of Berlot, and again, I don't want to step on the previous argument, but is that you can't have the same payments before and after the patent expires. And the payment before the patent expires is 3% for patented toys and 3% for the toy that was litigated. After the patent expires, it's zero for the patented toys and 3% for the toy that was litigated. Well, that's the last case. Right, right, and that's why I said I didn't want to step on the previous oral argument. But let me address a couple of the questions that you raised, Judge. I'm talking too fast. Our concern was when they tweaked the toy, are we going to get paid, or are they going to say it's not the toy that was litigated? So in order to make sure that we still had a hammer over them, that they would pay us even if they tweaked it, we kept Section 9 in there that said we still have the right to sue you under the verbal agreement in case you change it and say it's not the toy that was litigated. Now, everything was fine for eight or nine years. And in that time, Marvel made a deal with Hasbro. Marvel said, you know what, we're not in the toy-making business. Let's make a deal with someone who is in the toy-making business. So they made a deal with Hasbro. And the deal was for 10%. But the problem was that Hasbro, that Marvel thought that Hasbro was going to be paying us the 3%. And Hasbro said, we're not paying them the 3%. So we stopped getting paid because Marvel thought Hasbro was paying us. Hasbro says, I'm not paying you. We stopped getting paid. And that's when the fight begins. We initially say, well, we want to know what happens with Hasbro. And they said, it has nothing to do with you. Our deal with Hasbro is not an issue for you. But then it becomes an issue for us when we stop getting paid. So that's how the issue comes up about, hey, why are we not getting paid? And once Hasbro, once Marvel realizes, instead of getting 10%, they're now getting 7%. Because they've got to kick 3% back to us. Then the fight begins. Then let's start scouring through all the contracts. Let's try to find a way to get out of this agreement. And the first one is that, oh, Hasbro is making the toy. We're not making the toy, so we don't have to pay you. Well, that one falls by the wayside. The next argument is, well, Section 9 doesn't mean anything. Section 9 is just a throwaway. We have released everything because of Section 12, the integration clause. So what this is is simply an attempt to get out of an obligation to pay us because somebody at Marvel made a mistake and didn't make Hasbro sign the agreement that they would pay the 3%. Well, let's say that you're both making not necessarily winning arguments but convincing arguments. And what Judge O'Scanlan said is your Section 9 is in tension with another part of the settlement agreement. Both of you want to say it's unambiguous, and you want to say it's unambiguous because of Section 9. They want to say it's unambiguous because the settlement took care of their interpretation of it. But it's almost like I want to say Exhibit 1, Exhibit 2, I rest my case, it's ambiguous. If it's ambiguous, then what's the next step? The next step is not summary judgment. The next step is going back to see what the intention of the parties were. Well, what other, there's some indication that we have all the evidence in front of us, the extrinsic evidence that either of you would introduce. Is there other evidence that would be introduced? Well, I think it's, I'd have to think about that. But the fact that there is no expiration date and the fact that there is a survival, a specific survival of the verbal agreement. I mean, how else do you read Section 9 other than I get to keep my shoes? Other than except for all these other things we're releasing, we're keeping this. How else do you read that? And the reason that's in there is because of our fear that they would do what they're doing, that they are tweaking it and then saying, it's not the toy that was litigated, so we don't have to pay you anymore. Counsel, what law governs this case, New York or Arizona? New York law does. New York law, as I understand ambiguity, it means that the language is capable of having more than one meaning. Are you satisfied that there's only one meaning that could be gleaned from the combination of 9 and 12 here? To my way of thinking, yes. To my way of thinking, 9 says, I get to keep my shoes. And 12 says, other than what's contained in this settlement agreement, there's no other oral agreements that exist out there. And in fact, they cite three cases that say that paragraph 9 throws out paragraph 12. But those three cases do not say what they say it says. Those cases talk about extrinsic oral agreements and how those are extinguished when the integration clause is used. But this is not an extrinsic oral agreement. This is one that is specifically identified, enumerated, excluded from the settlement agreement. To the extent that there's ambiguity, then, the extrinsic evidence would be the testimony of the negotiators. Is all of that in the record? We can't make findings of fact, obviously. This is a repeat of the question that you had from Judge Callahan. I am scanning my brain to think of everything that's in the record. Maybe it would be easier from your point of view to send it back for fact findings, and then you'd have a record. Yeah, it may be. In my brief somewhere... But you're not asking for that. Well, I guess we're asking for two things. One, we're asking for a reversal to say that we're entitled to a ruling that, in fact, paragraph 9 survives. It has only one meaning, and it is the meaning you assign to it, not the meaning that your opponent assigns to it. And that may be the proof of the existence of an ambiguity. I know this is what it means. And when Mr. Fletcher stands up, he'll say, I know this is what it means. And they're not going to be the same thing. The more judges that look at it and the more that can't come to the same conclusion, it starts to look... I mean, I know when I look at things, ambiguity, according to Connie Callahan, may not. But then if I have colleagues that don't see it exactly as I do, I have to listen to that. And then what we're really saying is, is there any likelihood that a jury... Agreed. In fact, Magistrate Farrar, when he looked at it, he acknowledged that he believed that even after the execution of the settlement agreement, the verbal agreement survived. So clearly he is one person who believed in our position. Judge Brewer is a person who did not. So I recognize that they are both reasonable people, and when reasonable people come to differing conclusions, maybe there may be an ambiguity. I'd like to reserve the balance of my time. You may do so, Counsel. Thank you, Your Honor. We'll hear from Mr. Fleischer. Would you reintroduce yourself for the record, please? David Fleischer for Marvel Entertainment. Thank you. If this agreement had no release, is there any doubt that Section 12 would have required that this alleged oral agreement be eliminated as having any impact on the future? I don't think there would be. And that's really the situation we have. This isn't about a clause that says the obligations under the oral agreement survive. It says he's not releasing them. And as far as we were concerned, we didn't need a release. What does Section 9 mean, if it doesn't mean what he says it means? It means that every claim, other than those arising under the agreement itself, or that may arise under the oral agreement, are released. As I said, if there were no release provision at all, which is effectively what 9 is, it's just a release provision, the supersession clause in 12 would prevail. It still prevails just because there's a carve-out from the release in 9. But more fundamentally, I think we're losing sight of what is really being alleged here. The agreement that's being sued on here is an agreement that says if you choose to use any of the ideas I've communicated to you verbally at a meeting in 1990, you have to negotiate a reasonable royalty with me before you do so. The court below held, and we believe correctly, and we argued to them, and we argued in our briefs to you, that the entry into the 2001 settlement agreement is performance of that alleged oral agreement. It was full performance of it. And that, together with the supersession clause, puts the claim to rest. In addition, there were two other arguments that we proffered in the district court, which the district court judge didn't even reach because he was so persuaded by the fact that the 2001 agreement... We have raised judicata and statute of limitations, too, right? Precisely. Precisely. Take the statute of limitations argument first. A claim accrues under the statute of limitations under New York law when there's a breach. The sale of a toy without having negotiated a royalty would have constituted a breach. And since the 1997 complaint alleged that, that would be the latest possible date you could point to as the date a cause of action accrued for breach of this oral agreement. Well, what they're claiming, 2010, right? For the, when the, they're, on the statute of limitations, what, what's, they're, Kimball argues that until 2010, Marvel paid Kimball for every toy it made, and therefore Marvel did not breach the verbal agreement until it stopped paying in 2010, right? Yeah, that's what they're arguing, but they're, but they're misdirecting what the agreement was. The agreement wasn't to pay royalties. The agreement was to enter into an agreement to pay a reasonable royalty. We did that in 2001. I don't know. I'm kind of seeing a factual dispute here. I mean, I don't, I don't, I don't see where the, where the, where the factual dispute is. There's no dispute about what the oral agreement they allege was. That agreement was, if you are going to use our ideas, you have to first negotiate an agreement with us to pay a royalty. That's the agreement. That agreement was discharged in 2001 when we entered into the settlement agreement. This isn't a situation where this is like a lease where every month a new rent accrues. This was a situation, a totally different type of agreement. So you're saying the statute begins to run in 2001? No, I'm saying the statute began to run in 1997 when we were selling a toy without having entered into a royalty agreement. And if, and so the statute would have run six years later. Race Judicata also bars this claim. The oral agreement was the subject of the 1997 action. That case was dismissed with prejudice. The parties are identical. There's, or in privity, the issue was the same. Was that decision vacated? Yes, it was. So how much reliance can we place on it? Well, the dismissal is, a dismissal with prejudice pursuant to a stipulation and order is a determination on the merits for Race Judicata purposes. And that's what happened. As part of the settlement, the parties entered into a written stipulation of dismissal with prejudice and the court entered an order to that effect. So that is, for Race Judicata purposes, and there's no, it's not a controversial issue, a decision on the merits. You had an identity of the parties and you had an identity of the claims. The oral agreement claim was part of the 1997 action. So it is, it is, it is, in my view, a very easy issue to decide that Race Judicata bars this claim, as it is an easy issue on the statute. Well, but isn't, isn't, isn't Kimball claiming that the settlement agreement left open his new claim? And if in fact it's a new claim, then Race Judicata wouldn't apply to that. Isn't that what his claim is? Well, he wants to claim that, but he can't because it isn't, it isn't a new claim. But what's his, I'm saying what is his claim? You can say why it may not be persuasive, but am I stating his claim correctly? Is that what he's claiming? I think so, but when he says that, he's not focusing on, on what his claim is. His claim is for breach of an oral agreement. What he wants to do now is sue for breach of an oral, of the oral agreement. The terms of that oral agreement are not in dispute, and you can see in the record where we've cited the, the, the description of that agreement by Mr. Kimball. It was simply an agreement to negotiate a royalty before using his technology. Well, but I guess what I'm, I guess what I'm understanding his claim to be is that the new claim would arguably encompass new facts and new evidence related to new toys, as well as the lack of any compensation payments since 2010. So that, that wouldn't roll up in Race Judicata is I think what he's saying. He can come back and say if I said it wrong, but. I think that, I think that is what he's saying, but what he's ignoring is that you can't sue on the same agreement twice. It's like if, if he sued on a promissory note and, and we settled the action with a, with another note or another settlement agreement. You can't go back and sue on the note. The oral agreement that he alleged was to enter into an agreement. We did that. It was a novation. There's nothing left. I'm just, I'm just wondering the fact that I'm able to ask questions about what he says the agreement says, and you're saying no, that it doesn't say that. Is that more evidence of the ambiguity here? I think what it's evidence, Your Honor, of, and understandably so, of an unfamiliarity with the record, because there is no dispute about what the terms of the oral agreement are. If you'll, if you'll look at the citations in the, in the, in the brief to the record, we've pointed out where we're relying not on our interpretation of what the oral agreement says, but what Mr. Kimball has repeatedly said the oral agreement says. So I think your question is understandable, but I think if informed by the record, your question will be answered. I don't want to repeat myself, but I think there are four independent reasons why this contract claim was appropriately dismissed for summary judgment, two of which the district court relied on, the supersession provision, and the fact that the 2001 settlement agreement constituted performance of the agreement, and therefore it could not be, it could not go any further, race judicata and the statute of limitations. Any one of those four does the claim in, and we think all four do the claim in. Thank you, counsel. Mr. Kimball, you have some reserve time. There is no doubt that if section nine did not exist, this case wouldn't be here, because there would be no... I would like to believe you. I would like to believe that too. But it does exist, and that's why we're here. So the fact that it's there, it must mean something. And what it means is, let's look in context. There was a jury of work that said I was entitled to three and a half percent past, present, and future of a non-patented toy. That doesn't end when the patent expires. That part doesn't end when the patent expires. And when we negotiated it, we negotiated for the same type of thing, that the non-patented toy would continue. Except for three and a half percent, it's three percent. That was what the negotiation was. And that's why there was no ending date in the settlement agreement. Because it was the understanding that there was payment for the toy that would infringe the patent, if not for the sale of the patent. That there was payment for the toy that was litigated, and there was a bundle of rights that remained. And if Marvel at some point decided to tweak the toy and say this is not the toy that was litigated, this is not the toy that would have been a violation of the patent except for us buying it, that we still had a right to collect for those toys. Well, do you have a right or a right to negotiate? A right to assert a claim for those toys. Right, without the three percent. In other words, under your theory, I gather, that you're not arguing that you're entitled to three percent based on the verbal agreement. You're entitled to have a negotiation before they tweak the toy and do something. Is that it? Correct. And let me just briefly address the... But the breach here occurred, in your estimation, when they stopped making the payments. So there was no new toy, was there? Right. Yeah, in 2010, up until 2010, they were paying. But in 2010... But what new rights... But that, to me, may go back to the first case, which is what's the scope of the settlement agreement. If you're asserting some new right, do you have a new toy out there that you think that they haven't negotiated on? There is a new toy out there that they are selling right now for which they are not paying, which uses what was disclosed. So that's what the scope of this is about. Right. And there will be a new toy next year and a new toy the year after that. Spider-Man does live on, apparently. Spider-Man does live on. The court had addressed, why don't you guys do mediation? And, in fact, we did do mediation after the original jury verdict. And while the case did not settle at that mediation, mediation set the groundwork for the eventual settlement agreement that we're here talking about. We did discuss mediation in this second one. But I believe that the position was that we've got summary judgment. We're not going to pay anything. And it was simply there was no point. Let me be sure I understand. Did you say there was some mediation at least considered or maybe even you had a contact from our mediator with respect to this case? We did have contact from the mediator. We had contact with each other. At that time, you felt the sides were sufficiently far apart that it would not be of assistance. All right. I'm happy to answer any other questions you have. No further questions. Thank you, counsel. The case just argued will be submitted for decision. And the court will now adjourn.
judges: O'scannlain, Thomas, Callahan